UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE KNOX-BUCKLEY,

    Plaintiff,

                                  Case No. 06-14072

v.

                                  HONORABLE DENISE PAGE HOOD

GENERAL MOTORS CORPORATION,

    Defendant.
_____/

**ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT &
DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Dkt. #15, filed on July 20, 2007). Plaintiff filed a Response on August 15, 2007. Defendant filed a Reply on August 23, 2007.

This matter is also before the Court on Plaintiff's Motion to Compel Discovery (Dkt. #16, filed on July 20, 2007). Defendant filed a Response on July 31, 2007. A hearing on the Motions was held on October 17, 2007.

**II.    STATEMENT OF FACTS**

Plaintiff Katherine Knox-Buckley("Buckley") is an African-American female who was employed by Defendant General Motors Corporation ("GM") from 1967 until she retired in 2007.[1]

---

[1] Plaintiff retired sometime after she filed the Complaint. Therefore, Plaintiff does not allege constructive discharge.

During her career with GM, Buckley held several positions. In April 2002, Plaintiff became a Machine Operator and was transferred to the Flint North Plant, Plant 36. Plaintiff's allegations of sex and race discrimination relate to her employment at Plant 36.

Plaintiff's race and sex discrimination claims are supported by her allegations that she was given a greater workload than other machine operators.[2] First, she contends that the machine operators on the shifts before her left their tool changes for her to perform. Second, she contends that, on several occasions, she was asked to unload parts from a co-worker's machine. Plaintiff does not allege that any discriminatory remarks were ever directed toward her or made about her.[3]

Plaintiff commenced this action against GM on August 17, 2006, in the Circuit Court for the County of Flint. The Complaint alleges race and sex violation in violation of the Elliott-Larsen Civil Rights Act. The action was removed to this on Court September 15, 2006.

## II. STANDARD OF REVIEW

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). The party moving for summary judgment bears the initial burden and need not support its motion with

---

[2]In the Complaint, Plaintiff also alleged breach of contract. (Compl. ¶ 54.) She alleged breach of contract, because she disputed how much she was paid by GM for her quality improvement suggestion. (*Id.*) However, the parties stipulated to a dismissal of Plaintiff's breach on contract claim on July 6, 2007. (*See* Dkt. #13.)

[3]Although not alleged in the Complaint, Plaintiff makes a third assertion at deposition that she had a heavier workload than other machine operators on her shift, because her machines (Opt 20s) performed ninety percent of the machining on the item which Plaintiff's line produced. (Pl.'s Dep. at 121-22.) The Court does not treat this assertion as a claim, because this fact is inherent in the Opt 20s and would have applied to all of the Opt 20 operators on the various shifts.

affidavits or other materials "negating" the opponent's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987). Rather, "the burden on the moving party may be discharged by showing . . . to the district court . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

Once the moving party has met its burden of production, the nonmoving party must then go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

When ruling on a summary judgment motion, a district court should view the evidence in a light most favorable to the nonmoving party. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*, 503 U.S. 939 (1992). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### III. APPLICABLE LAW

Plaintiff alleges state law claims of race and sex discrimination against her in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), which provides, in pertinent part:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

3

MCL 37.2202(1)(a). Michigan courts look to Title VII federal precedent for guidance in reviewing claims brought under the ELCRA. *Featherly v. Teledyne Industries, Inc.*, 194 Mich. App. 352, 357-358 (1992). To state of prima facie case of disparate treatment discrimination under the ELCRA and Title VII, a plaintiff must demonstrate that: 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) others, similarly situated and outside the protected class, were unaffected by the employer's conduct. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007);*Town v. Michigan Bell Telephone Co.*, 455 Mich 688, 695 (1997).

An adverse employment action involves a "materially adverse change in the terms of . . . [an employee's] employment." *Kocsis v. Multi-Care Mgt, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A materially adverse change in the terms and conditions of employment:

> must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty National Trust Bank of Indiana*, 933 F.2d 132, 136 (7th Cir. 1993) (citations omitted); *see also Bowman v. Shawnee State University*, 220 F.3d 456, 462-63 (6th Cir. 2000). Requiring a employee to perform more work than other similarly-situated employees, combined with other factors such as heightened scrutiny and constructive discharge, may constitute an adverse employment action. *Ford v. General Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002).

Similarly situated individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The similarly situated inquiry requires that employees be similar "in all *relevant* respects" and not similar "in every single aspect of their employment." *Kane v. Kelly Servs.*, 2006 U.S. LEXIS 21553, at *10-11 (E.D. Mich. Mar. 30, 2007) (Hood, J.) (citing *Ercegovich*, 154 F.3d at 353). The relevance inquiry "is done on a case by case determination of the court." *Id.*, at *11 (citing *Ercegovich*, 154 F.3d at 352).

Once a prima facie showing is made by the plaintiff, a presumption of discrimination arises which the defendant can rebut by articulating a legitimate non-discriminatory reason for its actions. *Lulaj v. The Wackenhut Corp.*, 512 F.3d 760, 765 (6th Cir. 2008) (citing *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998)). The burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the articulated reasons were a mere pretext for discrimination. *Id.*

**IV.    ANALYSIS**

A.    Race and Sex Discrimination

There is no dispute that Plaintiff has provided the requisite showing for the first two elements of the prima facie test. Plaintiff is a member of two protected classes. She is African-American and female. Plaintiff is also qualified for her position. The parties are not in agreement as to whether or not Plaintiff has alleged facts sufficient to demonstrate the third and fourth elements of the prima facie case.

i.    *Third element of the prima facie case*

Plaintiff alleges that she was often left with tool changes from the previous shift. The Opt 20 machines, those operated by Plaintiff, produced 10 parts per hour. (Pl.'s Dep. at 117.) These

machines required a tool change after the production of 480 parts. (Pl.'s Dep. at 106.) Performing a tool change takes two hours. (Pl.'s Dep. at 107.) Herb Banister[4] operated the Opt 20 machines on the shift before Plaintiff when the machines were operated for two shifts. (Pl.'s Dep. at 86.) Kenny Lamb operated the Opt 20 machines on the shift before Plaintiff when the machines were operated for three shifts. (Pl.'s Dep. at 180-81.) At some point in time, Judy Druin replaced Mr. Lamb on the shift before Plaintiff. (*Id.*)

Most of Plaintiff's tool change complaints appear to be directed at Herb Banister. She alleges that Mr. Banister chose not to do tool changes on his shift, because he wanted to "get[] out of work." (Pl.'s Dep. at 107.) She alleges that in order to push the tool changes from his shift to her shift, he would stop making parts at some point during his shift. (Pl.'s Dep. at 107-08.) Plaintiff also complains about Judy Druin. (Pl.'s Dep. at 117.) Plaintiff alleges that Ms. Druin once left a tool change for Plaintiff, because Ms. Druin was ordered by a supervisor to download parts instead of doing the tool change. (Compl. ¶ 43.) Plaintiff also makes the general allegation that the individuals who worked on the shifts prior to hers neither cleaned nor properly offset the machines. (Pl.'s Dep. at 98.)

Plaintiff further alleges that she never left a tool change for the next shift. (Pl.'s Dep. at 102.) She alleges that, on her own initiative and without pay, she would sometimes work an additional forty-five to one-hundred-twenty minutes past her shift to perform tool changes, to clean her machines, or to perform offsets. (Compl. ¶ 24; Pl.'s Dep. at 102, 126.) The operator on the following shift, as well as her supervisor, would thank her for her extra work. (Pl.'s Dep. at 102-03.)

---

[4]At some point in time around the time Plaintiff filed her EEOC charge, Mr. Banister retired and was replaced. However, Plaintiff does not allege that Mr. Banister's replacement left her with tool changes. (Pl.'s Dep. at 180-81.)

Plaintiff never complained to management about working extra hours, because she did the work on her own initiative. (Pl.'s Dep. at 126.)

Defendant maintains that Plaintiff's allegations of being left with tool changes from the previous shift do not establish an adverse employment action, for two reasons. (Mot. Summ. J. at 8.) First, Plaintiff was not reprimanded, disciplined, suspended, demoted, terminated, or subjected to a loss in pay or benefits. (*Id.*) Second, Plaintiff's issue was resolved when Defendant discontinued the second and third shifts in Plaintiff's department. (*Id.*)

Plaintiff also alleges that she was occasionally asked to remove parts from Gary's[5] machine, while he was away at a local tavern, to make it appear as if Gary was doing his job. (Pl.'s Dep. at 126-27.) According to Plaintiff, Gary "had a drinking problem." (Pl.'s Dep. at 77.) She further alleges in the Complaint that none of her male coworkers were asked to fill in for Gary. (Compl. ¶ 27.) However, at deposition, she testified that other employees were asked to fill in for Gary, but they refused. (Pl.'s Dep. at 77, 127.) Plaintiff further testified that once she refused to do the work, her supervisor "backed off some." (Pl.'s Dep. at 128.)

Defendant maintains that Plaintiff's allegation of occasionally being asked to remove parts from Gary's station does not establish an adverse employment action, for three reasons. (Mot. Summ. J. at 8.) First, Plaintiff's job duties included the unloading of parts from various machines. (*Id.*) Second, Plaintiff was only asked to fill in for Gary in rare instances to keep the line running. (*Id.*) Third, Plaintiff's union committeeman found no problems with this grievance when she initially raised it. (*Id.*)

The Court finds Defendant's argument persuasive, in part. Plaintiff has not been subjected to any adverse employment action in the traditional sense. That is, Plaintiff does not allege that she

---

[5]This employee's last name is not indicated in the pleadings.

has been reprimanded, disciplined, suspended, demoted, terminated, or subjected to a loss in pay or benefits. However, the Court also finds party of Plaintiff's argument persuasive. Although Plaintiff does not set forth any citations for her argument that an uneven workload may constitute an adverse employment action, the case law nevertheless supports it. *E.g.*, *Ford v. General Motors Corp.*, 305 F.3d 545 (6th Cir. 2002); *Davis v. Ermco Mfg.*, 2000 WL 687688 (6th Cir. May 15, 2000) (unpublished).[6]

The Court finds *Ford v. General Motors Corp.*, 305 F.3d 545 (6th Cir. 2002) instructive on the issue of whether or not, under the facts of this case, Plaintiff was subjected to an adverse employment action. In *Ford*, the plaintiff, an African-American, alleged that two of his Caucasian coworkers left him with the more "difficult" tasks of their duties, telling him on one occasion that "we're white and we aren't supposed to work as hard." *Id.* at 548. The two coworkers, who had directed racial epithets to the plaintiff over the years, also told him that "a black man shouldn't have . . . [his] position." *Id.* at 549. The plaintiff further alleged that after he filed an EEOC claim, his co-workers forced him to "work [even] harder" and that management "scrutinized [him] more closely than . . . his coworkers." *Id.* at 553. As a result, the plaintiff decided to retire in lieu of facing what he viewed as inevitable termination. *Id.* at 551. Finding evidence supporting the allegations that the plaintiff had been constructively discharged, forced to perform more work than his coworkers, and subjected to heightened scrutiny that made his life as an employee unpleasant, the court determined that the plaintiff had alleged facts "sufficient to satisfy the third prong of the prima facie case." *Id.* at 554 (italics removed).

With the guidance of *Ford*, the Court concludes that Plaintiff has not alleged facts "sufficient

---

[6]In her Response to Defendant's Motion for Summary Judgment, Plaintiff does not address Defendant's arguments in detail. She addresses the four elements of the prima facie case with a two-sentence paragraph. (Def.'s Resp. at 8.) Instead, Plaintiff alleges that Defendant has "clearly tried to avoid answering [her] discovery requests." (Def.'s Resp. at 8-9.)

to satisfy the third prong of the prima facie case." *Id.* Although she alleges that she was often left with tool changes from the previous shift and was sometimes required to perform tasks outside of her assigned area, these allegations do not rise to the level of those presented and analyzed in *Ford*, for three reasons.

First, Plaintiff's allegations of a heavier workload appear to be self-imposed and not forced like those in *Ford*. Plaintiff admits that she was never required to work an extra two hours after her shift, without pay, to perform what the Court construes as the next shift's tool changes. Plaintiff's testimony also suggest that she was not forced to fill in for Gary; rather, she simply complied, unlike other employees, with a non-mandatory supervisory request. Second, unlike the plaintiff in *Ford*, Ms. Knox-Buckley has not alleged constructive discharge. In fact, she did not retire until sometime *after* she filed the Complaint in this case. (Pl.'s Resp. at 1.) Third, unlike the plaintiff in *Ford*, Ms. Knox-Buckley has not made allegations of heightened scrutiny. Here, the record does not show that management was critical of her job performance; rather, the record shows that Plaintiff was often praised for her performance. (*See e.g.*, Compl. ¶ 49; Pl.'s Dep. at 126-27, 137.) Accordingly, Plaintiff has failed to present evidence sufficient to establish the third element of the prima facie case.

      ii.     <u>Fourth element of the prima facie case</u>

Plaintiff makes the general allegation that she was treated differently from her similarly situated co-workers, "who were white females and males." (Pl.'s Resp. at 8.) To satisfy the fourth element of the prima facie test, Plaintiff must allege facts sufficient to demonstrate that others, similarly-situated and outside the protected class, were unaffected by the employer's conduct. *Clay*, 501 F.3d 703. A similarly situated employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

9

for it." *Ercegovich*, 154 F.3d at 352.

The similarly situated inquiry requires that employees be similar "in all *relevant* respects" and not similar "in every single aspect of their employment." *Kane*, 2006 U.S. LEXIS 21553, at *10-11. The relevance inquiry "is done on a case by case determination of the court." *Id.*, at *11. With respect to Plaintiff's claim of extra tool changes, Plaintiff seems to claim that she was similarly situated with the operators from the other shifts who also operated her machines. With respect to Plaintiff's claim of filling in for Gary, the Plaintiff seems to claim that she was similarly situated with all of the other machine operators on her shift.

Defendant sets forth two reasons why Plaintiff has failed to show disparate treatment. First, Defendant maintains that Plaintiff cannot show that other machine operators were treated differently, because "she does not know whether [or not] tool changes were [also] left for other[s]." (Mot. Summ. J. at 9.) Second, Defendant maintains that Plaintiff cannot establish that others "did not act to help keep the line running when a co-worker was not at his station." (*Id.* at 10.)

Defendant's arguments are more persuasive, because Plaintiff fails to allege facts to show that she was subjected to disparate treatment. Regarding her tool change claim, Plaintiff fails to show disparate treatment. Although she alleges that she was left with tool changes from the previous shift, she does not produce any evidence that other similarly situated machine operators from other shifts were not left with tool changes from the previous shift. (Pl.'s Dep. at 126-27.) Likewise, with respect to her claim that she was asked to fill in for Gary, she has not demonstrated disparate treatment. Plaintiff testified at deposition that other employees were similarly asked to fill in for Gary. (Pl.'s Dep. at 127.) But instead of declining to do the extra work like her coworkers, Plaintiff accepted the task. (*Id.*) Plaintiff does not cite any case law which permits an employee to create a situation of disparate treatment, and later sue her employer for that same disparate treatment. While Plaintiff's extraordinary work ethic is commendable, she has not presented evidence of

disparate treatment. Accordingly, Plaintiff has failed to present evidence sufficient to establish the fourth element of the prima facie case.

Defendant maintains that Plaintiff's subjective allegations of mistreatment fail to show discrimination. (Mot. Summ. J. at 13.) But even if Plaintiff could establish a prima facie case of discrimination, Defendant contends that her alleged facts would not substantiate a claim of discrimination in light its legitimate, nondiscriminatory reasons for requiring her to perform tool changes and remove parts from others' machines – that it needed to keep its lines running and that Plaintiff was being paid to perform a required job duty. (Mot. Summ. J. at 13.) Although Plaintiff contends that Defendant's asserted reasons for its conduct are pretextual and that Defendant had "no legitimate reason" for requiring Plaintiff to perform the tool changes and to remove parts from others' machines, (Dkt. #20 at 13,) this contention is unsupported. Accordingly, Defendant's Motion for Summary Judgment must be granted.

B.  Motion to Compel

The Court concludes that the additional discovery sought by Plaintiff is not required to respond to the parties' arguments with respect to summary judgment. In her first set of interrogatories, Plaintiff requests, among other things: 1) tool change logs; 2) information about other sexual harassment complaints from January 2002 to January 2007; 3) the personnel files of her four supervisors; and 4) the personnel file of an engineer. However, none of these requests seem necessary to assist Plaintiff in substantiating the third and fourth elements of the prima facie case. That is, none of the requests appear to support Plaintiff's allegation of having to perform more work than similarly situated employees. Although the production of tool change logs might specifically show how much more work Plaintiff performed than others, the Court has already assumed in the above analysis that she did perform more work than others. In any event, Defendant denies, by way of affidavit, that the machine operated by Plaintiff was decommissioned in 2007 and that it has no

11

"information of previous tool changes performed on the machine." (Def.'s Supplemental Br. In Supp. For Summ. J., Ex. A. ¶ 6, 9.) Accordingly, Plaintiff's Motion to Compel is denied.

## IV. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. #15, filed on July 20, 2007) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Discovery (Dkt. #16, filed on July 20, 2007) is **DENIED**.


          S/Denise Page Hood
          Denise Page Hood
          United States District Judge

Dated: March 31, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2008, by electronic and/or ordinary mail.

          S/William F. Lewis
          Case Manager